## L. P. FELT AND OTHERS v. EDWIN F. FINK AND ANOTHER.[1]

March 2, 1928.

No. 26,576.

In action to recover from creditor of plaintiff sureties amount of dividend paid by receiver of principal debtor, evidence sustained findings in favor of defendant bank.

Record examined and evidence *held* sufficient to support the findings.

Mortgages, 41 C. J. p. 354 n. 62.
Payment, 30 Cyc. p. 1293 n. 72.

Plaintiffs appealed from an order of the district court for Kandiyohi county, Baker, J. denying their motion for a new trial. Affirmed.

*T. O. Gilbert, C. A. Fosnes* and *John C. Haave,* for appellants.
*Daly & Barnard,* for respondents.

WILSON, C. J.

Plaintiffs appealed from an order denying their motion for a new trial.

The Minnesota Implement Company owed defendant State Bank of New London $4,680, evidenced by promissory notes on which plaintiffs were sureties. The implement company fell into the hands of defendant Fink as receiver, who allowed the bank's claim. Defendant receiver is also president of defendant bank. The bank sued plaintiffs on the same indebtedness. Plaintiffs had become debtor's sureties and together with other creditors met a representative of defendant bank in conference, which resulted in each plaintiff's adjusting a portion of his obligations. Plaintiff Bergquist was apportioned the indebtedness of defendant bank. He paid enough cash to reduce the debt to $3,300, for which amount he gave his note secured by a mortgage on his undivided one-third interest in a 200-acre farm having prior mortgages aggregating $17,000. Subsequently the receiver paid the bank a $1,460.66 dividend which it applied

[1]Reported in 218 N. W. 166.

on the $3,300 indebtedness. This action seeks to recover the $1,460.66.

1.   Plaintiffs claim that the Bergquist note was taken in payment of the debt due the bank and that it was agreed between the parties that dividends accruing from the receiver were to be assigned to and belong to plaintiffs. The bank denies this and claims that the giving and acceptance of the note and mortgage was conditioned on payment and that the original debt continued in existence and that it was entitled to the dividend to apply upon the debt evidenced by the Bergquist note. Defendants claim plaintiffs were to have an assignment of the bank's claim against the implement company only upon payment of the Bergquist $3,300 note. It would also seem that plaintiffs' contentions are more improbable than defendants' because defendant bank had loaned its money and was facing a probable loss when the adjustment was made. In all fairness and justice the right to the dividend should have remained with the bank until the debt was paid. All it sought was its money which plaintiffs owed. The Bergquist note and mortgage could not have been attractive to a bank. Their acceptance was apparently a necessity. That a banker would take such paper and surrender a claim of intrinsic value is unreasonable. The testimony of plaintiffs tended to support their version, which was denied by the testimony offered by defendants, which though not strong tended to support the claims of the bank and is sufficient to support the finding in its favor.

2.   About one year after Bergquist gave the $3,300 mortgage he executed a deed prepared by the cashier of the bank conveying the mortgaged premises to the bank subject to mortgages aggregating $20,300 which according to a clause in the deed the grantee assumed and agreed to pay. This deed was delivered but not recorded. The court found that this conveyance was "as further and additional security."

Plaintiffs claim that Bergquist was unable to meet his obligations and that the bank requested and received the deed and that it was given in payment of the mortgage debt. If so, the bank would have

no right to the dividend. The evidence would support a finding for plaintiffs. If the deed was a mortgage, as claimed by defendants, it was little more than the bank already had. But perhaps it was considered as an aid to the possession and the proper handling of the farm and the income therefrom. The bank did rent the farm and received the rent which it used to protect the farm against taxes and interest and is prepared to render an account therefor. The deed was left in the file in the bank. It was a badge of inefficiency from any standpoint. The trial court was presented with difficulties in attempting to ascertain the intention of the parties. It could hardly be supposed that the bank would assume $20,300 for one-third of 200 acres of land. The transaction never had the formal attention of the bank directors. The land was never carried on the books of the bank as real estate. An $8,500 mortgage on the land became due, and the bank did not pay it but put up the money and took an assignment. The absurdity of this small bank agreeing to assume such an unreasonable amount for what it was to receive is sufficient to impeach the good faith of the transaction upon the theory of the plaintiffs. It would have been a liability and not an asset. We need not discuss the authority of the cashier to commit the bank to such a ruinous contract. These circumstances are important here to ascertain if the vital finding is supported by the evidence. Extended discussion of the evidence is of no value. We have thoroughly examined the record and are satisfied that the testimony and circumstances in the record and the reasonable inferences which may properly be drawn therefrom are sufficient to support the finding that the deed was given as additional security.

Affirmed.